Donald BURKETT, Appellant,

v.

KANSAS CITY MISSOURI SCHOOL DIS-
TRICT and Second Injury Fund for the
State of Missouri, Respondent.

No. WD 53519.

Missouri Court of Appeals,
Western District.

Sept. 30, 1997.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Nov. 25, 1997.

Christina R. Schoeppey, Kansas City, for
Appellant.

Dora E. Reid, Kansas City, for Kansas
City, Missouri School District.

Randell Collins, Kansas City, for Second
Injury Fund for the State of Missouri.

Before ULRICH, C.J., P.J., and
LOWENSTEIN and EDWIN H. SMITH,
JJ.

LOWENSTEIN, Judge.

The appellant, Donald Burkett, is a teach-
er in the Kansas City School District. His
claim for Workers' Compensation against the
school district, as well as the Second Injury
Fund, for injuries he suffered while breaking
up a student fight, was dismissed for want of
prosecution. This ruling was affirmed by the
Labor and Industrial Relations Commission.
Burkett appeals the dismissal.

The initial claim was filed April 15, 1993,
for injuries suffered on February 18, 1993,
the date Burkett was knocked unconscious
and left in a stairwell at Metro High. Burk-
ett's problems stemmed from being unable to
retain the lawyer who filed the claim. Hear-
ing dates of April 15, 1994 and January 30,
1995 passed. After the January 30 date, the
Administrative Law Judge put the claim on a
Dismissal Docket for July 19, 1996; when
Burkett appeared on that date without coun-
sel, and not ready for hearing, the claim was
dismissed.

In a nutshell, the attorney who filed Burk-
ett's claim was terminated as counsel in June
1994. Obviously, the record here as to the
underlying claim for compensation is
sketchy, but the accident is admitted, some
medical has been paid, and the question ap-
pears only to be the nature and extent of the
permanent partial disability. Burkett has
seen numerous doctors for headaches and
vision problems. At the January 1995 hear-
ing, Burkett told the Administrative Law
Judge (ALJ) his problems obtaining new
counsel, including his assertion he was still
under treatment, his employer refused to pay
the bills, and he was unable to pay his medi-
cal bills from his own pocket. He contacted
five attorneys to handle his case (including
original counsel) which was set for dismissal
in July 1996. On June 17, 1996 he met with
the attorney who represents him on this
appeal. Counsel told him she would handle
and appeal if the ALJ subsequently entered
a dismissal, but told him it would take
months to prepare for hearing on the under-

lying claim, plus she could not adequately review the file before July 19th.

Counsel for the employer and the Second Injury Fund appeared at the July 19th setting, and asked that the claim be dismissed. Both lawyers said there had been no contact from Burkett for two years, and that Burkett was supposed to see a physician in August 1994, but failed to keep the appointment. Burkett told the ALJ of his attempts to retain counsel, that some had strung him along and sent him to doctors where he obtained ratings, but they ultimately refused to take his case after holding onto the file for months at a time. Counsel representing him on this appeal told Burkett to call her if the case was not dismissed. Before taking action, the ALJ called counsel and told her point blank the case would not be dismissed "if you will take the case." Counsel could not tell the ALJ she would represent Burkett. The case was dismissed because the claimant failed to appear ready for hearing on a case set on the dismissal docket. Counsel who would not take the Burkett claim has taken the appeal of the dismissal.

The dispositive question presented on this appeal is whether the Commission's decision to dismiss the claim, so long dormant, for lack of an attorney, should be affirmed, or whether the claimant showed good cause for failing to appear for hearing represented by counsel. *Ross v. Safeway Stores, Inc.*, 738 S.W.2d 611, 615 (Mo.App.1987); *Webb v. Labor and Industrial Relations Com'n*, 674 S.W.2d 672, 673—74 (Mo.App.1984); *Cade v. Bendix Corp.*, 564 S.W.2d 608, 610 (Mo.App. 1978). Section 287.650.1., RSMo 1994, states, "[T]he division shall have power to strike pleadings and enter awards against any party ... who fails ... to comply with its lawful orders." This power is delegated to the ALJ's in § 287,610.2, under a procedure, not here in question, in 8 C.S.R. 50–2.010(19). Review of this question of law is under § 287.495.1.(3) and (4), and the court must determine whether the undisputed facts justify the order of dismissal.

At the outset, this court must acknowledge a hesitance to negate an effort by an enormously busy section of state government to deal with its caseload. The court is not unmindful of the great stretch of time, with little activity and no attorney of record, from the claim (April 1993) through the hearing dates to the ultimate dismissal (July 1996).

It is also to be noted that despite the long delay, Burkett had attempted to retain counsel for a hearing. "[T]o dismiss a case for prior inactivity while it was being pursued could cause many cases to be dismissed which should not be." *Laurie v. Ezard*, 595 S.W.2d 336, 338 (Mo.App.1980). Though counsel for the employer and the Second Injury Fund had not heard from the claimant, he, as a non-lawyer, can hardly be faulted for not reporting to them because of his lack of success in obtaining counsel. Perhaps he will never be able to obtain counsel, either because of facts unknown to this court on this record, or merely because he was formerly represented and no one else wants to take his case. Nonetheless, Burkett, a father of six, who had an accident and suffered injury on the job which left him unconscious, has made more than a perfunctory effort to obtain counsel and litigate his claim. The delay has not been to thwart a defense by the defendants. The delay has not inured to the benefit of the claimant—he is unable to fund his own medical treatments, and is on a cash basis for treatment, and presumably rating physicians. It can also be inferred that counsel who prosecuted the appeal of the dismissal has had sufficient time to study the claim, and bring the matter to settlement or for adjudication on the merits as to permanent partial disability from this admitted accident. "The ends of justice will be better served by allowing the case to proceed on its merits rather than to be determined without the parties having an opportunity to present evidence and to otherwise be heard." *Laurie v. Ezard*, 595 S.W.2d at 338. These cases must be decided on a case by case basis, but, in Missouri the law disfavors dismissal of cases because of failure to prosecute. *McMillan v. Wells*, 924 S.W.2d 33, 35 (Mo. App.1996).

The order of dismissal is reversed, and the cause is remanded for a setting for hearing.

EDWIN H. SMITH, J., concurs.

ULRICH, C.J., P.J., dissents in separate dissenting opinion.

ULRICH, Chief Judge, Presiding Judge, dissenting.

I respectfully dissent. The power of Administrative Law Judges to dismiss workers' compensation claims for want of prosecution is not a raw, unbridled power and is subject to judicial review to remedy abuses of discretion. *Cade v. Bendix Corp.*, 564 S.W.2d 608, 610 (Mo.App.1978). The ALJ in this case did not abuse her discretion in dismissing Mr. Burkett's claim for want of prosecution.

As indicated by the majority, the legislature provided the division of workers' compensation with the power "to strike pleadings and enter awards against any party or parties who fail or refuse to comply with its lawful orders." § 287.650.1. ALJ's are charged with this power by section 287.610.2. In his affidavit filed before the Commission, Mr. Burkett acknowledges that the ALJ informed him at the January 30, 1995 hearing that his case would be set for dismissal on July 19, 1996 if he was unprepared to proceed. Nevertheless, Mr. Burkett appeared on July 19, 1996 without counsel and unprepared, and the ALJ dismissed his claims.

Section 287.495.1 dictates that the findings of fact made by the commission within its powers shall be conclusive and binding and that appellate review is limited to questions of law only. As required by *Ross v. Safeway Stores, Inc.*, 738 S.W.2d 611 (Mo.App.1987), Mr. Burkett was given an opportunity at the July 19, 1996 hearing to show good cause for his failure to prosecute. He described his difficulties in obtaining counsel to litigate his claim. The ALJ found that Mr. Burkett's case had been set for pre-hearing on October 14, 1993, for hearing on April 15, 1994, and January 30, 1995, and for dismissal on July 19, 1996. In addition, despite Mr. Burkett's explanation for his unpreparedness, the ALJ found that he did not show good cause for his failure to appear ready for hearing. These facts, including the question of good cause, were considered by the fact-finding tribunal,

the ALJ, upon the record and affirmed by the Commission. Mr. Burkett's failure to comply with the ALJ's January 30, 1995 order placing his case on the July 19, 1996 dismissal docket was a sufficient basis for dismissing his claims for want of prosecution under section 287.650.1.

In *Cade v. Bendix Corp.*, a referee [1] dismissed for want of prosecution a claim for workers' compensation benefits. 564 S.W.2d at 610. In affirming the dismissal, the court of appeals reasoned:

"The Division of Workmen's Compensation has no more immunity from the devastating effect of a highly accelerated caseload than the courts of this state-both are racked with a common problem. The last sentence of Sec. 287.650.1, supra, "[t]he division shall have power to strike pleadings and enter awards against any party or parties who fails or refuses to comply with its lawful orders", is cast in language which clearly and unequivocally empowers the referee to invoke the sanction of dismissal in order to minimize the congestion of claims in these days of crowded dockets, to utilize decisional manpower to the maximum extent, and to prevent undue delay in the orderly disposition of other pending claims. Failure on the part of the legislature to have empowered referees with the power to dismiss claims for want of prosecution would have seriously hampered the ability of referees to carry out their legislatively mandated function of hearing and determining claims "upon original hearing". Tangentially, and of cardinal importance, failure of the legislature to have empowered referees with statutory authority to dismiss claims for want of prosecution would have rendered them helpless, regardless of the harmful reverberations to prepared and compliant claimants, to thwart intentional, indifferent, or selfish delaying tactics on the part of a few claimants impeding the timely and orderly dispatch of the great bulk of compensation claims. Such an incongruous result was wisely avoided by the legislature by inclusion of the last sentence in Sec. 287.650.1, supra."

1. Referees are now administrative law judges,

section 287.610, RSMo Supp.1977.

*Id.* (citations omitted). The rationale in *Cade* is applicable still. As the first line of decision makers for workers' compensation claims, an ALJ has a very full docket. ALJs are analogous to trial courts in the sense that they must be able to control their dockets within reason. If control over an ALJ's power to dismiss cases is restricted beyond that authorized by the legislature, as the majority's opinion tends to do, an ALJ may become reluctant to eliminate those cases where dismissal is warranted. Lawyers or claimants may take advantage of an ALJ's reluctance to dismiss cases when dismissal is justified or even necessary because of the claimant's lengthy history of a refusal to prosecute the claims thereby causing unnecessary delays in the resolution of cases worthy of attention. ALJs may become completely inundated with cases as a result of a lack of authority to dismiss cases for want of prosecution. In her dismissal of Mr. Burkett's claim, the ALJ in this case spoke of these concerns stating, "I have got to have these dismissal dockets mean something. I have got to dismiss cases where they're not pursued." For the foregoing reasons, I would affirm the ALJ's dismissal in this case.