

# In the
# Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| **C. JENKINS NECKTIES,** | ) | |
| | ) | |
| Appellant, | ) | **WD86431** |
| | ) | |
| **V.** | ) | **OPINION FILED:** |
| | ) | **JUNE 18, 2024** |
| **DIRECTOR OF REVENUE,** | ) | |
| | ) | |
| Respondent. | ) | |

**Appeal from the Administrative Hearing Commission**

Before Division Four:  Gary D. Witt, Chief Judge, Presiding, Janet Sutton, Judge and
Sarah Castle, Special Judge

C. Jenkins Neckties ("Neckties") appeals the order of the Administrative Hearing

Commission ("AHC") finding that the AHC had no authority to reconsider its order

dismissing Neckties' tax appeal.  On appeal, Neckties argues that:  (1) the AHC's order is

in error because the AHC misinterpreted section 621.189 to conclude that the AHC was

not required to give Neckties actual notice of the dismissal of Neckties' tax appeal; and

(2) even if actual notice is not required, the AHC erred in failing to give Neckties

reasonable notice of the dismissal because the notice was sent to Neckties' counsel's

("Counsel")[1] email of record after she had left her law firm ("Law Firm").  We affirm the AHC's order.

## Factual and Procedural Background

Neckties is a small business in the St. Louis metropolitan area.  The Director of Revenue ("Director") audited Neckties' financial records and found that, for the period of January 1, 2017, to December 31, 2019, Neckties underreported gross and taxable sales per annual sales summary reports.  The audit found a "tax difference" of $12,341.33, which the Director determined Neckties owed to the State.  After receiving the audit letter from the Director, Neckties, through Counsel, filed a petition for review with the AHC challenging the Director's decision.  Counsel, who at the time worked for Law Firm, signed the petition as "ATTORNEY FOR C JENKINS NECKTIES."

After the Director answered the petition, the AHC set the matter for hearing on October 20, 2021, but the hearing was continued, and the AHC directed the parties to file a status report by December 3, 2021.  This order stated "Failure to comply with this order may result in dismissal of this case pursuant to 1 CSR 15-3.436(1)(C) and 1 CSR 15-3.425(1)(A)."  Neither party filed a status report by the deadline, and on December 13, 2021, the AHC issued an order directing the parties to show cause by December 27, 2021, why the case should not be dismissed.  Neckties, through Counsel, electronically filed a "SHOW CAUSE, STATUS REPORT AND UNOPPOSED MOTION FOR CONTINUANCE" with the AHC, reporting that the parties were engaged in settlement

---

[1] In accordance with section 509.520, we do not use the names of witnesses other than parties.

2

negotiations and asked the AHC to continue the matter to a later date so the parties could continue to work toward a settlement. This filing was made by Counsel through electronic filing and listed Counsel's email address consistent with all prior filings.

On December 29, 2021, the AHC directed the parties to file a joint status report by June 15, 2022. This order also informed the parties that failure to comply with the order may result in dismissal of the case. On or about May 1, 2022, Counsel left her position with Law Firm. Counsel did not notify the AHC, opposing counsel, or even her own client, Neckties, that she was leaving Law Firm. Counsel had apparently failed to enter into an engagement agreement with Neckties, and she did not notify Law Firm that transition of the case to another attorney with Law Firm was necessary.

On July 18, 2022, more than a month past the status-report deadline, the AHC dismissed the case for the parties' failure to comply with its order. The AHC notified the parties of its dismissal by sending an electronic copy of its order to the email addresses of the attorneys of record, including Counsel. Two other attorneys employed by Law Firm eventually learned of this dismissal, contacted Counsel at her new place of employment, and had discussions with Counsel to determine whether she had taken the case to her new law firm, which she had not. Law Firm informed Neckties of Counsel's departure and of the dismissal and entered into a formal engagement agreement with Neckties on November 17, 2022. On December 16, 2022, Law Firm filed an unopposed motion to set aside the order of dismissal and a request for substitution of counsel. The motion argued "good cause" to set aside the dismissal asserting that Neckties should not be penalized for "the inadvertence of its counsel."

3

The AHC indicated to the parties that it did not believe it retained authority to set aside its prior dismissal as it was more than thirty days past the date of the dismissal, and the AHC asked the parties to brief this legal issue. Neckties argued that its motion to set aside the dismissal was timely as it was filed within thirty days of Neckties having received actual notice of the AHC's dismissal in that Neckties did not receive actual notice of the dismissal until November 17, 2022. The Director countered that actual notice of the dismissal was not required, but merely reasonable notice, which Neckties received when the AHC sent electronic notice of its dismissal to Neckties' counsel of record (Counsel). The AHC agreed with the Director that it lost its authority to reconsider the dismissal order thirty days after it sent notice to Counsel. This appeal follows.

## Standard of Review

We affirm the decision of the AHC when: (1) it is authorized by law; (2) it is supported by competent and substantial evidence upon the whole record; (3) mandatory procedural safeguards are not violated; and (4) it is not clearly contrary to the legislature's reasonable expectations. *Charter Commc'ns Ent. I, LLC v. Dir. of Revenue*, 667 S.W.3d 84, 86-87 (Mo. banc 2023). However, we review *de novo* all questions of law and statutory interpretation raised in an AHC decision. *Id.* at 87. The issues raised in this appeal are legal and subject to *de novo* review.

## Analysis

Neckties' first point on appeal is that the AHC erred in determining that it lacked authority to set aside its former order dismissing Neckties' tax appeal. Specifically,

4

Neckties argues that the AHC had authority to set aside its former order because Neckties' motion to set aside was filed within thirty days of it having received actual notice of the dismissal. We disagree.

First, we address whether the issue presented is one of authority versus jurisdiction. In *J.C.W. ex rel. Webb v. Wyciskalla*, 275 S.W.3d 249, 254 (Mo. banc 2009), our Supreme Court declared that circuit courts are courts of general jurisdiction with jurisdiction over all cases civil and criminal, and statutory limitations are therefore only limits to the courts' *authority* to hear certain matters or to make certain determinations. The AHC is not a body enjoying general jurisdiction granted by Missouri's constitution. The AHC is a creature of statute and has only the jurisdiction that is granted to it by the Legislature. *Shaw v. Admin. Hearing Comm'n*, 537 S.W.3d 881, 886 (Mo. App. W.D. 2018). Section 621.050.1[2] provides that a party may appeal to the AHC decisions or assessments made by the Director "by the filing of a petition with the [AHC] within thirty days after the decision of the director is placed in the United States mail or within thirty days after the decision is delivered, whichever is earlier." This limits the AHC's *jurisdiction* to cases falling within the provisions of the statute for these cases. After making a final decision, the AHC retains jurisdiction over the matter within the time provided by section 621.189. That provision reads, in pertinent part:

> Final decisions of the [AHC] in cases arising pursuant to the provisions of section 621.050 shall be subject to review pursuant to a petition for review to be filed in the court of appeals in the district in which the hearing, or any part thereof, is held or, where constitutionally required or ordered by transfer,

---

[2] All statutory references are to the Revised Statutes of Missouri (2016) as currently updated by supplement.

to the supreme court, and by delivery of copies of the petition to each party of record, **within thirty days after the mailing or delivery of the final decision and notice thereof in such a case.**

Section 621.189 (emphasis added). During the thirty days following the decision, in this case a dismissal, the AHC has the power to set aside the dismissal. "[A]n administrative body has the inherent power to set aside a dismissal for good cause as a necessary corollary to the power of dismissal and it has the inherent power to reinstate the appeal." *Eleven Star, Inc. v. Dir. of Revenue*, 764 S.W.2d 521, 522 (Mo. App. W.D. 1989). After the thirty days, the AHC loses jurisdiction over the matter. This Court cannot extend that time. *Id.*

> The 30 day limit on the appeal from the decision of the [AHC] simply means that the party appealing to this court from the [AHC] decision must file a motion to set aside the dismissal and obtain a final decision from the [AHC] reinstating the petition prior to the expiration of the 30 days following the final decision. If the [AHC] does not set aside the dismissal within the 30 day time limit, the order of dismissal would stand unless a petition for review were filed in this court within that time.

*Id.*

While Neckties apparently agrees that the AHC only retains the power to set aside the dismissal for thirty days, it argues that its petition for review was filed within the thirty days allowed because, according to section 621.189, "within thirty days after the mailing or delivery of the final decision and notice thereof" means within thirty days of when the appealing party has actual notice of the AHC's decision. We find that neither the plain language of the statute nor the interpreting case law supports this position.

6

Section 621.050.2 dictates that the procedures applicable to appeals from the Director heard by the AHC "shall be those established by chapter 536." Section 536.090, entitled "Decisions in writing—notice" states, "Immediately upon deciding any contested case the agency shall give written notice of its decision by delivering or mailing such notice to each party**, or his attorney of record**, and shall upon request furnish him with a copy of the decision, order, and findings of fact and conclusions of law." (emphasis added). The statutes expressly authorize "notice" to be provided to the attorney of record. At the time the AHC dismissed Neckties' appeal, Counsel was Neckties' attorney of record. She had been communicating with the AHC and with opposing counsel via her Law Firm email address, which is the address to which notice of the dismissal was sent by the AHC. Notice of the dismissal was sent in accordance with sections 536.090 and 621.189, and, per the latter, the thirty-day time limit for the AHC to set aside its dismissal began running on July 18, 2022.

The attorney-client relationship is based in agency and notice to an agent, acting in that capacity is imputed to the client. *Brown as Tr. of George E. Heard Revocable Tr., Dated Feb. 24, 2000 v. Barnes*, 641 S.W.3d 241, 247 n. 3 (Mo. App. W.D. 2021). That Neckties did not directly receive the notice and that Counsel did not read or pass on the notice are not facts that render the notice inoperable. In *Williams v. City of Kinloch*, 657 S.W.3d 236 (Mo. App. E.D. 2022), a party was sent notice of an administrative body's action, where notice was similarly governed by section 536.090, by sending it "to the business email address of Williams's counsel." *Id*. at 239, 241. The court noted, that, although counsel claimed to have moved his office and changed his address, "[t]he email

7

was not returned as undeliverable, nor was there any other indication that Williams's counsel did not receive notice of the Board's decision." *Id.* at 240. While *Williams* was not a review under section 621.189, the review in that case operated under the same definition of notice found in section 536.090, and the court found the email notice sent to counsel of record sufficient.

Similar to *Williams*, in this case, Neckties argues that the notice was ineffective because it did not directly reach Neckties or Counsel. Neckties' brief alleges that Counsel's email had been "deactivated" and states that any message to the email "would have generated an auto-response email indicating that the email was not delivered because the intended recipient was not longer with the firm and provided an alternate person at the firm to contact." But, as in *Williams*, there is no evidence of this in the record before this Court. The citations to the record on appeal following this assertion in Neckties' brief do not support this "fact." "[T]he allegations in the petition and argument by counsel are not evidence. There was no evidence of counsel's change of address or that the notice was returned as undeliverable." *Williams*, 657 S.W.3d at 242-43 (internal citation omitted). We see no essential difference between this case and *Williams*.

Neckties makes much of the fact that, unlike some other statutes, section 621.189 expressly provides that review shall be "within thirty days after the mailing or delivery of the final decision **and notice thereof** in such a case." (emphasis added). Neckties argues that the addition of "and notice thereof" alters the definition of notice found in section 536.090 to require actual notice to the party. Again, we disagree. Section 536.090 provides that written notice of the agency's decision be given, "and shall upon request

8

furnish him with a copy of the decision, order, and findings of fact and conclusions of law." We believe that these statutes, read together, indicate that, where the party requests a copy of the decision, order, and findings of fact and conclusions of law, that both be provided. However, where, as in this case, a matter is dismissed by the AHC for inactivity after multiple warnings that the matter may be dismissed if the parties do not update the AHC of the status, the parties presumably would not need a written copy of the decisions, findings, and conclusions, and a written notice of the decision would suffice. Although inartfully drafted, we find that section 621.189 provides for either situation. We do not find that "and notice thereof" changes the definition of notice in section 536.090, which expressly applies to section 621.189. Notice prescribed by the statutes was provided, the thirty-day time period began running on July 18, 2022, and the AHC was therefore without jurisdiction to set aside its dismissal of Neckties' appeal.

Point I is denied.

Neckties' second point on appeal is that, even if actual notice is not required, the notice given to Neckties in this case was not reasonable in that it was sent to a deactivated email account and not received by either Neckties or Counsel.

For the same reasons discussed in our analysis of Point I, we find that there is no evidence that the email of record for Counsel had been "deactivated" or that the notice sent to Counsel's email of record was in any way insufficient. Further, if the account had been deactivated, there is no evidence that the AHC was aware that the notice was not received. The AHC gave the notice required by the applicable statutes. Counsel never moved to withdraw from representation of Neckties, did not notify the AHC of an

9

updated email address, and did not even inform Neckties that she would not continue the legal representation. If Neckties did not know Counsel no longer intended to represent it, the AHC certainly had no way of knowing that Counsel would not receive the notice and pass it on to Neckties. The AHC notified Counsel and Neckties of its show cause orders via Counsel's Law Firm email address, which had been provided by Counsel to the AHC, and the AHC had received responses from Counsel submitted from that email address. There is nothing in the record to suggest that the AHC had any reason to believe that notice to that email address would no longer be received, read, or passed on to Neckties. The notice provided was reasonable.

Point II is denied.

## Conclusion

For the above-stated reasons, we affirm the order of the AHC.

_____
Gary D. Witt, Chief Judge, Presiding

All concur

10