

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

PROFESSIONAL FIRE FIGHTERS )
OF EASTERN MISSOURI, )
INTERNATIONAL ASSOCIATION )
OF FIRE FIGHTERS, LOCAL 2665, )
       )
          Appellant, )
       )
v. )     WD86174
       )
CITY OF RICHMOND HEIGHTS, )     Opinion filed:  November 28, 2023
       )
       )
          Respondent. )

**APPEAL FROM THE CIRCUIT COURT OF COLE COUNTY, MISSOURI**
**THE HONORABLE S. COTTON WALKER, JUDGE**

Division One: Edward R. Ardini, Jr., Presiding Judge,
Anthony Rex Gabbert, Judge and Janet Sutton, Judge

Professional Fire Fighters of Eastern Missouri, International Association of Fire Fighters, Local 2665 (the "Local") appeals the judgment of the Circuit Court of Cole County, affirming a decision of the State Board of Mediation (the "Board"). The Local filed a Petition for Certification of Representation with the Board, seeking to create a bargaining unit consisting of fire captains employed by the City of Richmond Heights (the "City") and to be certified as that unit's bargaining representative. The City filed a motion

to dismiss the Local's petition. The Board granted the City's motion and dismissed the petition pursuant to the "contract bar rule." The Local sought judicial review of the Board's dismissal of its Petition for Certification of Representation in the Circuit Court of Cole County (the "trial court"). The trial court affirmed the decision of the Board. We find the Board's decision was arbitrary and unreasonable, and thus we reverse the trial court's judgment.

## Factual and Procedural Background

There exists between the Local and the City a Memorandum of Understanding ("MOU") providing that the Local is the exclusive bargaining representative of all full-time employees of the City's fire department, excluding "Captains, Battalion Chiefs, and Fire Chief." Beginning in September 2020, the Local and the City engaged in collective bargaining negotiations to modify the existing MOU, which resulted in the City rejecting several proposals by the Local to include captains in the bargaining unit. The Local then turned to the Board in its efforts.

"The State Board of Mediation is a quasi-judicial board created by section 295.030 to oversee labor disputes arising between parties subject to Chapter 295 (which generally relates to 'labor relations affecting public utilities')." *St. Louis Police Officer's Ass'n v. St. Louis Cty.*, 670 S.W.3d 86, 88 n.1 (Mo. App. E.D. 2023). "Several other Missouri statutes have 'borrowed' the Board for their purposes," including—as relevant to this appeal—section 105.525, which is part of Missouri's public sector labor law. *Id.* Section 105.525

2

provides that "[i]ssues with respect to appropriateness of bargaining units and majority representative status shall be resolved by the state board of mediation."[1]

In October 2021, the Local filed a Petition for Unit Clarification with the Board, seeking to expand the certified bargaining unit of fire department employees to include captains. The Board dismissed the Local's petition without prejudice pursuant to the "contract bar rule." The Board's contract bar rule provides that "petitions to the State Board of Mediation are untimely if the bargaining unit subject to the petition is covered by an active labor agreement, unless the petition is filed no earlier than 90 days and not later than 61 days before the termination of the agreement." *Prof'l Fire Fighters of E. Mo., IAFF Local 2655 v. City of Hazelwood*, Public Case No. UC 2014-007, 2014 WL 12767422, at *3 (Mo. State Bd. of Mediation Dec. 23, 2014).[2] In dismissing the Local's petition, the Board explained that "a valid agreement exists between [the City's] Fire Department and [the Local]," "[t]he term of the agreement is for a year period which is in effect until April

---

[1] In 2018, the General Assembly enacted HB 1413, which repealed almost all sections of Missouri's public sector labor law and created twenty-one new sections. *St. Louis Cty.*, 670 S.W.3d at 91. However, HB 1413 was subsequently struck down by the Missouri Supreme Court on equal protection grounds. *See Mo. Nat'l Educ. Ass'n v. Mo. Dep't of Labor & Indus. Relations*, 623 S.W.3d 585, 592-93 (Mo. banc 2021). The Court "not only struck HB 1413 from the books, but the public sector labor law, sections 105.500-105.530, reverted to its pre-HB 1413 iteration." *St. Louis Cty.*, 670 S.W.3d at 91. Accordingly, all references to sections 105.500 to 105.530 are to the 2016 version of these statutes.

[2] The contract bar doctrine is also applied by the National Labor Relations Board, with the purpose of "promot[ing] industrial peace by stabilizing, for a reasonable term, a contractual relationship between employer and union." *NLRB v. F & A Food Sales, Inc.*, 202 F.3d 1258, 1261 (10th Cir. 2000). Similarly, the Board's stated purpose of applying the contract bar rule is to "balance[] the competing interests of the employees' freedom of choice in selecting a bargaining representative and the stability of collective bargaining agreements between an employer and the employees' elected union." *City of Hazelwood*, 2014 WL 12767422, at *3-4.

21, 2022," and that "being the case, the agreement acts as a bar to any election until the 'open window' period which is January 22, 2022 to February 20, 2022."

On January 17, 2022, the Local again filed a Petition for Unit Clarification with the Board, seeking to expand the certified bargaining unit to include captains. The Board again dismissed the petition without prejudice pursuant to the contract bar rule, as the "open window" period did not begin until January 22nd.

On February 11, 2022—within the "open window" period—the Local re-filed its Petition for Unit Clarification. This time the Board dismissed the petition with prejudice on the grounds that the petition violated the "Wallace-Murray Rule, which prohibits adding previously excluded employees to the unit without an election."[3]

Counsel for the Local e-mailed the chairman of the Board, asking what type of petition the Local should file to request an election to include captains in the existing bargaining unit:

> The Board's website only lists four types of Petitions which may be filed, and none of those Petitions appear to fit squarely into the current situation. The closest arguably applicable Petition would be the Petition for Certification of Representation. Before our office files this Petition, we wanted to seek confirmation from you that this is the Petition the Board is asking to be filed in order for an election to be conducted to include Captain's [sic] in the existing bargaining unit. If this is not the proper Petition, please advise.

---

[3] "The NLRB first announced this limitation on unit clarification in *Wallace-Murray Corp.*, 192 NLRB 1090 (1971), and has adhered to the rule since." *NLRB v. Miss. Power & Light Co.*, 769 F.2d 276, 279 (5th Cir. 1985) (describing the rule as preventing employees from being "added by unit clarification . . . where they intentionally and historically were excluded from the existing bargaining unit" (internal emphasis omitted)).

The chairman responded, "You are correct; a Petition of Certification of Representation is proper. Should the election be successful, we could then merge the two units with a Unit Clarification Petition."

On March 10, 2022, the Local filed a Petition for Certification of Representation with the Board, "requesting an appropriate unit consisting of Fire Captains." Attached to the petition was the required "showing of interest"—a form that listed the names of three fire captains and stated that these captains "desire[d] to have the [Local] as their exclusive bargaining representative."[4] The City submitted an objection letter to the Local's petition.[5]

The Board conducted a telephone conference with the parties, during which the chairman of the Board requested the parties file briefing. Counsel for the Local sent correspondence to the chairman seeking clarification as to what issues the chairman wanted briefed. The chairman responded that, "the City indicated that the Captains are members of management. The Board will look at the seven factors that the City mentioned in their objection letter, organizational structure, job descriptions, etc., to reach a decision."

---

[4] Pursuant to the regulations in effect at the time the Local filed this petition, "Certification means the designation by the chairman or the board of an employee organization selected as the majority representative of employees through an election in an appropriate unit[.]" 8 CSR 40-2.010(1)(C). "A petition for certification of public employee representative" shall contain—among other information—"[a] description of the bargaining unit claimed to be appropriate for the purposes of exclusive representation by the petitioner" and shall be accompanied by a "showing of interest" of "not less than thirty percent (30%) of the employees in the unit alleged to be appropriate." 8 CSR 40-2.030(1)(B), (I) (in effect on March 10, 2022).

[5] While the City's objection letter was not made part of the record on appeal, it is apparent from other items in the record that at least one of the City's objections to the petition was that the captains were managerial employees and thus were not entitled to form or join a labor organization.

As context to the chairman's response, managerial employees are not deemed "employees" within the purview of section 105.510, which provides that "[e]mployees . . . of any public body shall have the right to form and join labor organizations and to present proposals to any public body relative to salaries and other conditions of employment through the representative of their own choosing." *See Baer v. Civilian Pers. Div., St. Louis Police Officers Ass'n*, 747 S.W.2d 159, 163 (Mo. App. W.D. 1988) ("the legislature did not intend for all persons on the public payroll to be considered employees for bargaining purposes," and "[t]he Board consistently takes the position that the definition of 'employee' in § 105.510 excludes both 'managerial' and 'confidential' employees"); *see also Mo. Nat'l Educ. Ass'n v. Mo. State Bd. of Mediation*, 695 S.W.2d 894, 897 (Mo. banc 1985) ("In the course of labor relations, someone must act on behalf of the public employer and it is the responsibility of the Board to exclude from an otherwise appropriate bargaining unit those employees, if any, whose duties involve acting directly or indirectly in the interest of the employer in relation to other employees." (internal marks omitted)). Managers "are generally defined as those employees who formulate, determine or effectuate policies on behalf of their employer." *Cent. Cty. Emergency 911 v. Int'l Ass'n of Firefighters Local 2655*, 967 S.W.2d 696, 700 (Mo. App. W.D. 1998). The Board considers seven factors when determining whether employees are managerial. *See id.*

Consistent with the chairman's request, the Local filed a brief in support of its petition. The Local asserted that the issue of "whether or not Captains are members of management" was "not ripe for consideration by the Board since its present Petition seeks only an election for Captains to determine their exclusive bargaining representative." The

Local also argued that, even if the issue was ripe for consideration, captains were not members of management under the seven factors considered by the Board in determining managerial status.

Rather than brief the issue requested by the Board, the City filed a motion to dismiss the Local's petition as untimely pursuant to the contract bar rule. The City asserted that "a valid MOU [was] in effect" and was "not set to expire," therefore the Board should dismiss the Local's petition.

The Board agreed with the City, and on May 3, 2022, the Board dismissed the Local's petition with prejudice pursuant to the contract bar rule, finding that "a valid agreement exist[ed] between the City of Richmond Heights Fire Department and the IAFF Local 2655" and that agreement was "active and will remain active until April 21, 2023." The Board stated that although its "previous dismissal indicated that the MOU was in effect until April 21, 2022[,] . . . that was assuming the union would adhere to the terms of the MOU and submit a written request to the employer to modify the MOU. Because the union did not do that, the current contract is in effect until April 21, 2023."[6]

On May 17, 2022, the Local appealed to the trial court. *See* § 105.525 ("In the event that the appropriate administrative body or any of the bargaining units shall be aggrieved by the decision of the state board of mediation, an appeal may be had to the circuit court of the county where the administrative body is located or in the circuit court of Cole

---

[6] The MOU provides that it "shall be automatically renewed from year to year . . . unless either party shall notify the other in writing at least ninety (90) days prior to the anniversary date that [it] desires to modify this Memorandum of Understanding."

7

County."). The Local and City filed a Joint Stipulation of Facts, and each party filed proposed findings of fact and conclusions of law, and briefs in support. The Local argued that the trial court should review the Board's decision under section 536.150 because this is a non-contested case; the City argued that this is a contested case, and thus the scope of the trial court's review was governed by section 536.140.[7]

The trial court entered its Judgment with Findings of Fact and Conclusions of Law. The trial court concluded that the "Board's decision was reached after a contested hearing," limited its scope of review to those grounds listed in section 536.140, and affirmed the Board's dismissal of the Local's petition. The trial court "further [found] that nothing precludes the Local from re-petitioning the Board requesting that the Captains form and join a separate labor organization apart from the existing bargaining unit defined in the parties' MOU."[8]

The Local appeals, asserting ten points relied on.

**Analysis**

In its first point, the Local asserts the trial court erred in reviewing the Board's decision as a contested case. The standards of review on appeal differ for contested and

---

[7] The Missouri Administrative Procedure Act—Chapter 536—"outlines two distinct procedures for circuit court review of an administrative proceeding, each with different filing requirements and review processes: those for contested cases (Sections 536.100 to 536.140) and those for non-contested cases (Section 536.150)." *Metro Fill Dev., LLC v. St. Charles Cty.*, 614 S.W.3d 582, 588 (Mo. App. E.D. 2020).

[8] The trial court adopted the City's proposed findings of fact and conclusions of law, including this final finding, in which the trial court advised the Local that it can petition the Board requesting the captains form a separate bargaining unit apart from the existing unit defined in the MOU. But—as discussed more fully in our analysis—that is exactly what the Local did when it filed its Petition for Certification of Representation.

8

non-contested cases. One such difference is that in contested cases we review the decision of the agency—here, the Board—whereas in non-contested cases we review the decision of the trial court. As previously stated, the Local asserts this is a non-contested case. Consistent with that argument, in Points Two through Six, the Local claims the *trial court* erred in affirming the decision of the Board. In Points Seven through Ten, the Local argues that "in the event this Court finds the Board's decision was made in a contested case, and therefore the trial court's review under RSMo § 536.140 was appropriate," the *Board* erred in dismissing the Local's petition. Thus, we begin by determining whether this matter is a contested or non-contested case.[9]

### *This Is a Contested Case*

As stated above, the Local asserts in its first point that the trial court erred in reviewing the Board's decision as a contested case. We disagree.

A contested case is "a proceeding before an agency in which the legal rights, duties or privileges of specific parties are required by law to be determined after hearing." *Furlong Cos., Inc. v. City of Kan. City*, 189 S.W.3d 157, 165 (Mo. banc 2006). "Contested cases provide the parties with an opportunity for a formal hearing with the presentation of evidence, including sworn testimony of witnesses and cross-examination of witnesses, and require written findings of fact and conclusions of law." *Lampley v. Mo. Comm'n on Human Rights*, 570 S.W.3d 16, 20 (Mo. banc 2019) (quoting *Furlong Cos.*, 189 S.W.3d at 165).

---

[9] "The classification of a case as 'contested' or 'noncontested' is determined as a matter of law." *City of Valley Park v. Armstrong*, 273 S.W.3d 504, 506 (Mo. banc 2009).

9

Non-contested cases, on the other hand, "do not require formal proceedings or hearings before the administrative body." *Id.*; *see also Furlong Cos.*, 189 S.W.3d at 165 ("The [Missouri Administrative Procedure Act] does not explicitly define a 'non-contested case,' but it has been defined by [the Missouri Supreme Court] as a decision that is not required by law to be determined after a hearing.").

There is no dispute that the Board's determinations as to the appropriateness of bargaining units under section 105.525 are contested cases. *See, e.g.*, *Jackson Cty. v. Mo. State Bd. of Mediation*, 690 S.W.2d 400, 402 (Mo. banc 1985) (reviewing Board's certification of appropriate bargaining unit as a contested case under section 536.140); *City of Cabool v. Mo. State Bd. of Mediation*, 689 S.W.2d 51, 53-54 (Mo. banc 1985) (same); *Cent. Cty. Emergency 911*, 967 S.W.2d at 699, 702 (affirming the Board's determination that shift supervisors were not supervisory employees and reviewing the matter as a contested case); *see also St. Louis Cty.*, 670 S.W.3d at 93 n.6 (In the Board's capacity to resolve disputes regarding the appropriateness of bargaining units, "the Board is authorized to hear contested cases and 'provide a forum to decide if the bargaining unit proposed by the employees is acceptably constituted[.]'" (quoting *City of Columbia v. Mo. State Bd. of Mediation*, 605 S.W.2d 192, 194 (Mo. App. W.D. 1980))); 8 CSR 40-2.140 (the Board's regulation regarding hearings, which requires that notice of the hearing be given to all parties and states that the parties have a right to present evidence, including calling and cross-examining witnesses, at the hearing).

The crux of this matter is a dispute as to the appropriateness of a bargaining unit. The Local filed a Petition for Certification of Representation seeking to create a separate

10

bargaining unit of captains with the Local as the unit's exclusive bargaining representative, the City objected on the grounds that the captains were managers, and the Board dismissed the Local's petition. Although the Local asserts that this is a non-contested case because "the Board did not conduct a formal hearing to determine the legal rights of the parties, did not take oral evidence upon oath or affirmation or cross-examination of witnesses, and did not make a record," the dismissal of a contested case before the hearing transpires does not convert the matter to a non-contested case. *See Smith v. City of St. Louis*, 573 S.W.3d 705, 715 (Mo. App. E.D. 2019) (finding the Civil Service Commission's "dismissal of Appellant's case prior to an evidentiary hearing did not convert the proceeding to a non-contested case"); *see also Eleven Star, Inc. v. Dir. of Revenue*, 764 S.W.2d 521, 522-23 (Mo. App. W.D. 1989) (treating the Administrative Hearing Commission's dismissal of a case prior to a hearing as a decision in a contested case).

For these reasons, we conclude this matter is a contested case and that the trial court did not err in reviewing it as such. Point One is denied. Additionally, because Points Two, Three, Four, Five, and Six are premised on the Local's argument that this is a non-contested case, we deny those points as well.

*Standard of Review for a Contested Case*

"In an appeal following judicial review of an administrative agency's decision in a contested case, this court reviews the agency's decision and not the circuit court's judgment." *Hallam v. Mo. Dep't of Soc. Servs.*, 564 S.W.3d 703, 706 (Mo. App. W.D. 2018) (internal marks omitted). "Section 536.140 governs judicial review of an agency's

11

decision in a contested case, including appellate review." *Id.* Pursuant to that statute, we examine the agency's decision to determine if it:

(1) Is in violation of constitutional provisions;

(2) Is in excess of the statutory authority or jurisdiction of the agency;

(3) Is unsupported by competent and substantial evidence upon the whole record;

(4) Is, for any other reason, unauthorized by law;

(5) Is made upon unlawful procedure or without a fair trial;

(6) Is arbitrary, capricious or unreasonable; [or]

(7) Involves an abuse of discretion.

§ 536.140.2. "Arbitrary and capricious" has been defined as "willful and unreasoning action, without consideration of and in disregard of the facts and circumstances." *Mo. Corr. Officers Ass'n, Inc. v. Mo. Office of Admin.*, 662 S.W.3d 26, 36 (Mo. App. W.D. 2022). "An administrative agency acts unreasonably and arbitrarily if its findings are not based upon substantial evidence." *Id.* (internal marks omitted). "Moreover, an agency which completely fails to consider an important aspect or factor of the issue before it may also be found to have acted arbitrarily and capriciously." *Id.*

*The Board Erred in Dismissing the Local's Petition*

In Points Seven, Eight, Nine, and Ten, the Local asserts the Board erred in dismissing the Local's Petition for Certification of Representation. In Point Ten, the Local argues that the Board's decision was "not supported by substantial and competent evidence in the record, as it was arbitrary and capricious," in that it "ignores the clear intent of the Local's petition seeking to become the exclusive bargaining representative of only

12

captains." The Local argues the Board "inexplicably relie[d] upon the 'contract bar' rule to dismiss the Local's Petition, when the existing MOU does not include the position of Captain in its defined bargaining unit." We agree, and find this point dispositive.

The Local's Petition for Certification of Representation only "request[ed] an appropriate unit consisting of Fire Captains," with the Local being the captains' exclusive bargaining representative. The captains are not covered under the existing MOU; in fact, they are expressly excluded from the bargaining unit described in the MOU, and thus the MOU does not apply to them and cannot bar them from seeking to create their own bargaining unit and obtain representation. In dismissing the Local's petition pursuant to the contract bar rule, the Board presumably construed the petition as a request to add captains to the existing bargaining unit of employees covered by the MOU. While the Local had previously sought to add captains to that bargaining unit, and while the Local's ultimate goal in the future may be to add captains to that bargaining unit, the Petition for Certification of Representation that was before the Board did not seek such relief, and only requested a separate bargaining unit of captains and to have the Local certified as that unit's exclusive bargaining representative. The contract bar rule should not have applied to the Local's Petition for Certification of Representation. *See also City of Hazelwood*, 2014 WL 12767422, at * 3 (in which the Board stated that it applies the contract bar rule where "the terms of the agreement between the employer and bargaining representative that has been adopted clearly cover the employees that are the subject of the petition pending before the Board").

13

The City argues that the Board correctly applied the contract bar rule, claiming that the Local was "attempt[ing] to include captains in the existing bargaining unit." In making this argument, the City relies on *Professional Fire Fighters of Eastern Missouri, IAFF Local 2665 v. City of Hazelwood*, an administrative decision of the Board in which it applied the contract bar rule. *See* 2014 WL 12767422, at *3-4. In *Hazelwood*, like here, the labor agreement between the Local and the City of Hazelwood covered a bargaining unit of firefighters that expressly excluded captains and battalion chiefs. *Id.* at *2-3. Unlike here, however, the petition at issue in *Hazelwood* was a Petition for Unit Clarification, in which the Local "ask[ed] that the bargaining unit be clarified by adding Captains and Battalion Chiefs into the existing unit." *Id.* at *3. The Board noted that, "[a]lthough the contract bar rule was designed to apply in the case of petitions for certification and decertification, the Board will also apply the bar to dismiss a unit clarification petition . . . if, in the particular circumstances of the case, allowing the petition would be disruptive of the parties' collective bargaining relationship." *Id.* (internal marks omitted). The Board found that because the current bargaining agreement specifically excluded captains and battalion chiefs from the unit, "clarification of the bargaining unit . . . to add positions explicitly excluded by an active collective bargaining agreement would be disruptive of the parties' bargaining relationship by contradicting the freely bargained agreement of the parties." *Id.* Thus, the Board applied the contract bar rule to dismiss the Local's Petition for Unit Clarification. *Id.*

The City argues *Hazelwood* is "an almost identical case" without addressing the glaring distinction that *Hazelwood* involved a Petition for Unit Clarification in which the

14

Local asked that captains be added to the existing bargaining unit, whereas here the Local filed a Petition for Certification of Representation requesting the creation of a separate bargaining unit of captains. *Hazelwood* lends no support to the City's assertion that the Board properly applied the contract bar rule in this case.

Finally, in urging us to dismiss the Local's appeal for lack of standing, the City argues that the Local "was not aggrieved by the trial court's judgment in that it could have re-petitioned the Board and narrowly tailored its request to include the captains in a separate bargaining unit apart from the MOU's existing bargaining unit." But that is exactly what the Local did: it petitioned the Board to create a separate bargaining unit consisting of captains. In fact, the City stipulated to this fact before the trial court. Paragraph 16 of the parties' Joint Stipulation of Facts states that "the Local filed a Petition of Certification of Representation with the Board, with the required showing of interest of the three currently employed Captains, *seeking to create a separate bargaining unit consisting of Captains*." (emphasis added).

For these reasons, we find that the Board's dismissal of the Local's Petition for Certification of Representation based on the contract bar rule was arbitrary and unreasonable. *See Mo. Office of Admin.*, 662 S.W.3d at 36 (an administrative agency "acts unreasonably and arbitrarily if its findings are not based upon substantial evidence" or if it "fails to consider an important aspect or factor of the issue before it"). In so holding, we express no opinion as to how the Board should resolve the Local's petition, only that dismissing it pursuant to the contract bar rule was erroneous.

Point Ten is granted.

15

## Conclusion

We reverse the judgment of the trial court and remand with directions that the trial court reverse the Board's order of dismissal and remand the case for further proceedings.

_____
EDWARD R. ARDINI, JR., JUDGE

All concur.

16